## CONEY & PARKER *et al. v.* BRUNSWICK & FLORIDA STEAMBOAT COMPANY *et al.*

1. The owner of property who has leased it to another, who is to keep it in repair, has no right to maintain a petition for an injunction to prevent interference with the mere use, occupation, and enjoyment of such property in the hands of the lessee and during his term.
2. The lessee of the owner of a pier, though the same extends into the waters of the ocean beyond the line of low-water mark, is, however, entitled to enjoin from using the same one who bases his alleged right to do so solely upon the claim that it is " a public pier."

Argued June 28, — Decided August 8, 1902.

Injunction. Before Judge Bennet. Glynn superior court. June 13, 1902.

*Crovatt & Whitfield* and *Ernest Dart*, for plaintiffs in error.
*W. E. Kay*, contra.

FISH, J.    This was an application by the Brunswick & Florida Steamboat Company, hereinafter called the Steamboat Company, against Coney & Parker and others, to enjoin the defendants from using a wharf called " Ocean Pier," on St. Simons Island, for the purpose of landing thereat vessels carrying passengers. The original petition was amended by making Tupper & Co. parties plaintiff, who alleged that they had leased from the original plaintiff the pier in question with the right to the exclusive use thereof. The amendment was allowed over objection by the defendants. The defendants filed a demurrer to the petition, and also answered the same. At an interlocutory hearing which followed, the court, upon considering the petition, demurrer, answer, and the evidence submitted, granted an injunction as prayed.

1. It is quite clear, we think, that no injunction should have been granted in favor of the Steamboat Company, the original plaintiff.    The purpose of the injunction was merely to restrain interference with the use, enjoyment, and occupation of the pier.    For the time being, the exclusive right to the use of the pier was in Tupper & Co., the lessees of the plaintiff, and any interference therewith by the defendants could affect injuriously the lessees only, they having bound themselves to keep the pier in repair. There was no occasion, therefore, for the Steamboat Company to in-

voke equitable aid to prevent such interference. As to this matter an appropriate direction will be given.

2. There was evidence sufficient to warrant the judge in finding that the pier in question was originally constructed by a street-railroad company, which, under its franchises, had the right to erect and use an improvement of this kind, and also that the rights and franchises of this company had duly and regularly passed to the Steamboat Company, as the successor in right and title of the street-railroad company above mentioned, and that the Steamboat Company had partially rebuilt the pier and kept it in repair and had the exclusive use of the same for many years. It also appeared that the defendants, recognizing the right of the Steamboat Company to possess and use the pier in question, had, during the previous season, paid it for the privilege of landing their steamboats there. Indeed, the court was authorized to find from the evidence that the defendants had admitted, prior to the institution of this suit, that they had no right to use the pier without paying for the privilege. Their alleged right to use it at all was based solely upon the claim that it was " a public pier" at which any person could lawfully land his craft. We are of opinion that in so far as the injunction protected the rights of Tupper & Co., the lessees, from interference by the defendants it was properly granted. Under the facts appearing, the pier in question could not properly be characterized as a public pier, save only upon the theory that it extended out into the waters of the ocean beyond the line of low water, and that to this extent at least it was open to the entire public. We do not think that this bare fact entitled the defendants to treat and use the pier as public property. It may be that the State of Georgia might have authority to cause the removal of so much of the structure as extended into the waters of the ocean, if it appeared that it was erected there without the proper authority from the State. What may be the law in this regard is not a question which now presents itself for our determination. The owner of the pier before leasing it, and its lessees after the lease had been made, were, in our judgment, entitled to its exclusive use and enjoyment as against one setting up no better claim than that presented by the defendants. As we have seen, there was evidence to the effect that they themselves recognized that the rights of the Steamboat Company and its lessees were superior to theirs, and

that they only claimed the right to use the pier upon paying for the privilege. The right to demand pay for the use would, it seems, carry with it the right to prevent interference, unless the party seeking the use should resort to condemnation proceedings and thus acquire a right to the use and pay for the same accordingly.

There is in the bill of exceptions an assignment of error alleging that the judge erred in allowing the amendment making Tupper & Co. parties plaintiff; to which, as we have seen, the defendants objected at the time the amendment was offered. We can not now pass upon this exception, for the reason that the case came here on a fast writ of error, which properly brings to this court only the interlocutory order granting the injunction.

*Judgment affirmed, with direction. All the Justices concurring,. except Lewis, J., absent.*