### STATE OF GEORGIA et al. v. SOUTHERN RY. CO.

(District Court, N. D. Georgia. December 5, 1918.)

1. REMOVAL OF CAUSES ⨀⇒18—JURISDICTION OF FEDERAL COURT—IMPAIR-
MENT OF OBLIGATION OF CONTRACT.

Actions against defendant, which used part of the right of way of the Western & Atlantic Railroad, a road owned by the state of Georgia, which were brought by the state and by the lessee of the railroad under authority of the Western & Atlantic Railroad Commission, pursuant to Act Ga. Aug. 4, 1916 (Acts 1916, p. 146) § 5a, *held* actions merely to determine the rights of defendant in the property under the various acts of the state Legislature, and not to be removed to the federal court on the ground of impairment of contract obligations or deprivation of property without due process of law.

2. REMOVAL OF CAUSES ⨀⇒48—SEPARABLE CONTROVERSY.

Where, under the authority of the Western & Atlantic Railroad Commission, separate actions were begun in the name of the state of Georgia and the lessee of the Georgia-owned railroad, wherein it was asserted that the defendant had encroached upon the property, *held* that, though the lessee was a foreign corporation, there was no separable controversy between it and defendant, which could be removed to the federal court, for the rights of the lessee depended on the state, and the same evidence would have to be adduced in either case.

3. REMOVAL OF CAUSES ⨀⇒11—CASES WHICH CAN BE REMOVED.

No suit which could not have been originally brought in the federal court can be removed from a state court.

4. REMOVAL OF CAUSES ⨀⇒102—CASES WHICH CAN BE REMOVED.

Where it was doubtful, under Act Ga. Aug. 4, 1916 (Acts 1916, p. 146) § 5a, whether the state of Georgia, which sued defendant, asserting it had encroached on a state-owned railroad, could be considered an unnecessary party to removed cause, and the lessee of the railroad, which had also sued, be considered the sole party, so that the federal District Court for Georgia might have taken jurisdiction under Judicial Code, § 57 (Comp. St. § 1039), as having jurisdiction of the property, the court will remand the cause to the state court.

At Law. Separate actions by the State of Georgia and by the Nashville, Chattanooga & St. Louis Railway Company against the Southern Railway Company were removed from the state to the federal court. On motion to remand. Motions granted.

William A. Wimbish, of Atlanta, Ga., for plaintiffs.
McDaniel & Black, of Atlanta, Ga., for defendant.

NEWMAN, District Judge. There were two distinct actions instituted by the above complainants against the defendant, the Southern Railway Company, one in the superior court of Fulton county, Ga., and the other in the superior court of Whitfield county, Ga., under authority of the Western & Atlantic Railroad Commission, seeking analogous relief in said two counties, and each was removed to the United States District Court for the Northern District of Georgia, and they are now heard together on motions to remand.

In each of these actions it is alleged: That the state of Georgia is the sole and exclusive owner of the Western & Atlantic Railroad,

together with its rights of way and properties, extending from the city of Atlanta, in the state of Georgia, to the city of Chattanooga, in the state of Tennessee, and extending through the said counties of Fulton and Whitfield, in the state of Georgia. That the Western & Atlantic Railroad was constructed as a great public work by the state of Georgia, solely out of public funds, and that all of the property appertaining to said railroad, including its right of way and terminals, is exclusively owned by the state of Georgia, directly and immediately, in its sovereign or governmental capacity. That the said railroad has never been incorporated, nor has it any capital stock, nor does it constitute a legal entity, being public property, and the income derived therefrom constituting a part of the public funds, and, under the laws of the state, devoted to public uses. That the Nashville, Chattanooga & St. Louis Railway, a corporation of the state of Tennessee, operates the said Western & Atlantic Railroad under a lease from the state of Georgia, under the corporate name of the Western & Atlantic Railroad Company, which said lease came into existence in the following manner:

The said Western & Atlantic Railroad was, for a number of years, operated directly by the state, through its legislative and executive departments; that is, until the 27th day of December 1870, when it was leased to and operated by a private corporation known as the Western & Atlantic Railroad Company, for a term of 20 years, pursuant to an act of the General Assembly approved October 25, 1870 (Acts 1870, p. 423). Upon the expiration of this lease, on December 27, 1890, the said railroad was leased to the Nashville, Chattanooga & St. Louis Railway for a term of 29 years, the lessee becoming a corporation of the state of Georgia under the name and style of Western & Atlantic Railroad Company, pursuant to an act of the General Assembly approved November 12, 1889 (Acts 1889, p. 362), which lease is still current and will not expire until the 27th day of December, 1919.

In the case of the Fulton county action it is alleged that the Southern Railway Company is occupying and using, for the operation of its trains and the conduct of its business, a considerable portion of the right of way of the said Western & Atlantic Railroad in and near the city of Atlanta, in the county of Fulton, which is then more specifically described, and that said defendant claims a right or license to use and occupy said portion of said right of way by virtue of certain acts of the General Assembly of Georgia, to wit: Act approved December 20, 1860 (Acts 1860, p. 193), and act approved December 11, 1866 (Acts 1866, p. 127), authorizing the Governor to grant to the Georgia Western Railroad Company the right to build its railroad upon the right of way of the Western & Atlantic Railroad for the distance, at the location, and under the conditions named therein, and act approved August 23, 1872 (Acts 1872, p. 337), authorizing the said Georgia Western Railroad Company to construct its line on the right of way of the Western & Atlantic Railroad under certain conditions named therein, and also act approved February 27, 1877 (Acts 1877, p. 236), incorporating the Georgia Pacific Railroad Company, which became

the legal successor of the Georgia Western Railroad Company, and providing that such legal successor should possess all the rights, powers, immunities, and franchises possessed by the Georgia Western Railroad Company. The defendant, the Southern Railway Company, having become the purchaser, at judicial sale, of the properties and assets of the said Georgia Pacific Railroad Company, claims to have succeeded to and become invested with all the rights and privileges conferred upon and enjoyed by the said Georgia Pacific Railroad Company, including the use of the right of way of the Western & Atlantic Railroad in controversy here.

It is further alleged that under date of August 6, 1881, the then Governor of the state of Georgia, acting upon a petition of the Georgia Pacific Railroad Company, made and entered an executive order granting to said company the privilege of building its road on the right of way of the Western & Atlantic Railroad for a distance not exceeding four miles, from the depot in Atlanta, and upon conditions named therein; that under claim of authority granted by said executive order the said Georgia Pacific Railroad Company proceeded to lay its tracks upon, and to use and occupy, a portion of the said right of way of the Western & Atlantic Railroad in, and for some distance beyond, the city of Atlanta, and thereafter continued the use of said right of way for the operation of its trains, and subsequently also or the operation of the trains of the East Tennessee, Virginia & Georgia Railroad Company.

It is then alleged that the said use and occupation did not conform with the requirements and limitations of said executive order, nor was it authorized by the acts referred to, pursuant to which said order purports to have been made, for reasons then specifically set out; that the Georgia Pacific Railroad Company never acquired any lawful right to use or occupy said right of way of the Western & Atlantic Railroad, and its use thereof was permissive only, and by sufferance of the state and its lessee.

Further it is alleged: That, under the Constitution and laws of Georgia, the Legislature was forbidden to authorize, and the Governor was incompetent to grant, any portion of the right of way of the Western & Atlantic Railroad, or to create a permanent and exclusive easement therein, to any person or corporation, without such valuable consideration therefor as could and should be applied to the reduction of the bonded debt of the state, or to dispose of any of the property or property rights of the state as a donation or gratuity, or without such valuable consideration therefor as would support a grant, and that such consideration was never paid by the Georgia Pacific Railroad Company or received by the state. That at the time of the acquisition of the properties of the Georgia Pacific Railroad Company by the Southern Railway Company at judicial sale, on August 18, 1894, the defendant, the Southern Railway Company, had notice that the Georgia Pacific Railroad Company had no legal right to the use and occupancy of that portion of the right of way of the Western & Atlantic Railroad now in question, for that the said railroad company had never complied with the terms of the several acts and resolutions

of the General Assembly in that behalf, or of the executive order passed in pursuance thereof. That therefore the Southern Railway Company did not, by reason of its purchase at judicial sale, acquire or become vested with any license or privilege that the said Georgia Pacific Railroad Company may have enjoyed, to the use or enjoyment of any portion of the right of way of the Western & Atlantic Railroad. That should said acts of the Legislature and the said executive order be construed as authorizing a qualified use of said right of way by the Georgia Pacific Railroad Company, such use was permissive only, and constituted nothing more than a license to be enjoyed at the will of the state upon the conditions expressed, and that such authority, if it existed, was in the nature of a special privilege not authorized by law to be granted to each and all railroads alike, and as such did not pass to the purchaser.

It is further shown that the continued use and occupancy by the Southern Railway Company of said right of way of the Western & Atlantic Railroad is in derogation of the state's right and title thereto, and operates to exclude the state and its lessee from the use and enjoyment thereof, that such use and occupation, being without warrant in law, constituted a continuing trespass, and a constantly recurring grievance, occasioning irreparable injury incapable of pecuniary estimation.

It is further alleged that by an act approved November 30, 1915 (Acts 1915 [Extra Sess.] p. 119), the Western & Atlantic Railroad Commission was created for the purpose and with the powers and duties therein expressed and by an amendment thereto, approved August 4, 1916, was given full power and authority in its discretion, to deal with and dispose of any and all encroachments upon, and use and occupancies of, any part of the right of way and properties of the Western & Atlantic Railroad, and to take such action as might be deemed proper and expedient, and to institute and prosecute, in the name and behalf of the state of Georgia, such suits or other legal proceedings as might be deemed appropriate in protection of the state's interests or the assertion of the state's title, in pursuance of which authority these proceedings were instituted.

In the action instituted in Whitfield county it is alleged on information and belief that the Southern Railway Company claims some right or license to the use of a certain portion of the right of way of the Western & Atlantic Railroad in said county by reason of the following facts:

That at the time of the lease to the Nashville, Chattanooga & St. Louis Railway, above referred to, the East Tennessee, Virginia & Georgia Railway Company, a foreign corporation, was using and occupying a portion of the right of way of the said Western & Atlantic Railroad in and for a distance of about seven miles south of the city of Dalton, in said county, that such use and occupation was maintained by said railway company until the 8th day of July, 1894, when all its assets and properties were sold, pursuant to judicial decree, and purchased by and in behalf of the Southern Railway Company, since which time said Southern Railway Company has used and oc-

cupied said portion of the right of way of the Western & Atlantic Railroad, which is then more specifically described. That this right or license is claimed pursuant to an act approved December 14, 1859 (Acts 1859, p. 313), authorizing the Governor to grant to the Dalton & Gadsden Railroad Company (a Georgia corporation) the right to construct its railroad for a short distance upon the right of way of the Western & Atlantic Railroad, provided the said Dalton & Gadsden Railroad Company should grant a similar privilege to the Western & Atlantic Railroad, and provided, further, that such grant be not, in the opinion of the Governor, incompatible with the public interests, which right or license was subsequently acquired by the East Tennessee, Virginia & Georgia Railway Company, and thus passed to the Southern Railway Company.

It is then alleged: That no record or memorandum can be found indicating that the Dalton & Gadsden Railroad Company, or either of its successors, ever applied to the Governor for the grant of any right or privilege pursuant to said act, that no order or other authority granting any such privilege was ever made or given by the Governor, nor has any similar privilege ever been granted to the Western & Atlantic Railroad by said Dalton & Gadsden Railroad Company, or any or either of its successors. That therefore the occupation of said right of way by said Southern Railway Company is not referable to nor authorized by said act, but has been and is being maintained by said Southern Railway Company without authority of law therefor, and without the consent of the state of Georgia or its said lessee. That it operates to exclude the state and its lessee from the use and enjoyment thereof, constituting a continuing trespass and a constantly recurring grievance, occasioning irreparable injury, incapable of pecuniary estimation.

This petition then alleges the creation of the Western & Atlantic Railroad Commission, with the authority vested therein, as stated above in connection with the Fulton county suit.

These suits have been removed from the superior courts of the counties in which they were brought, respectively, to the United States District Court on the ground of diversity of citizenship and the existence of a separable controversy between the Nashville, Chattanooga & St. Louis Railway, one of the plaintiffs, and the Southern Railway Company, the former being a citizen of the state of Tennessee, and the latter a citizen of the state of Virginia, except that it is asserted in the petition that under the leasing act, by which the Nashville, Chattanooga & St. Louis Railway obtained its rights to the railroad, it was provided that it should become a corporation of the state of Georgia under the name of the Western & Atlantic Railroad Company, therefore the situation was such that, at the time of the removal, it was a citizen of the state of Georgia under that act. It is then alleged in the petition for removal that the District Court of the United States for the Northern District of Georgia would have jurisdiction of the causes, for the reason that they are brought to enforce legal or equitable liens upon or claims to, or to remove incumbrances or liens or clouds upon the title of real property lying in the state of Georgia

and in the Northern district thereof. A separable controversy, it is
claimed, exists—

"because the petition filed by the plaintiff sets out no cause of action, legal
or equitable, in favor of the state of Georgia; it clearly appearing from the
face of the petition filed jointly by the state of Georgia and the Nashville,
Chattanooga & St. Louis Railway Company, in connection with the exhibits
thereto and the laws of Georgia, of which judicial cognizance will be taken,
that the state of Georgia has no right of possession to the rights of way, lands,
and other appurtenances which have been made the subject of the controversy,
but, on the contrary, it clearly appears that the Nashville, Chattanooga & St.
Louis Railway, as lessee of the state, is entitled to the sole and exclusive
possession of the properties involved, if it should be found that your petitioner
is in wrongful possession and occupancy thereof.

"(b) Your petitioner further shows that there exists a separable contro-
versy between it and the Nashville, Chattanooga & St. Louis Railway Com-
pany, wholly determinable between the two, and which can be fully deter-
mined without the presence of the state of Georgia as a party to the cause,
for the further reason that, even if it should be considered that the posses-
sion and occupancy of the premises involved constitutes an injury to the
freehold, the right, remedy, and redress which the state of Georgia would
have in the controversy incident upon such injury to the freehold would be
entirely different and separable from the right which the Nashville, Chatta-
nooga & St. Louis Railway may assert by reason of the deprivation of its
possession of the premises in dispute; the controversy which the state might
urge being separable from that which the Nashville, Chattanooga & St.
Louis Railway might be entitled to prosecute, there existing in the two no
joint controversy or right of action."

Setting out that it had given bond, as required by law, the petition
of the Southern Railway Company then shows that its appearance
through its attorneys to remove this suit is a special appearance, and
does not waive objections to the jurisdiction of the court; it being
solely for the purpose of removal of the case from the state court to the
United States court for the Northern district of Georgia.

After the removal of the case to this court, the removal papers hav-
ing been filed on July 26, 1918, the Southern Railway Company, on
October 12, 1918, amended its petition for removal, or attempted to
do so, in the following way:

"Your petitioner further shows that said cause involves a controversy be-
tween it and the state of Georgia of the value of more than $3,000, exclusive
of interest and costs, which arises under the Constitution and laws of the
United States, for that it is apparent upon the face of plaintiff's petition
that there arises between petitioner and the state of Georgia controversies as to
whether the action of the Western & Atlantic Railroad Commission in pur-
suance of the act of the General Assembly of Georgia approved November
30, 1915, as amended August 4, 1916, in instituting this suit, and as to
whether the acts of the Legislature in question themselves impair the obliga-
tion of the contract between the state of Georgia and the predecessors of peti-
tioner which arose under the act of the General Assembly approved December
14, 1859 (which acts are set up and referred to in the equitable petition filed
by plaintiffs), contrary to that provision of article 1, section 10, paragraph 1,
of the Constitution of the United States, which, among other limitations on
the powers of the individual states, forbids that a state shall pass a law
impairing the obligation of contracts.

"And petitioner further shows that there is necessarily involved in the con-
troversy the question as to whether the act of the General Assembly of Georgia
approved December 14, 1859, together with the action of the Western & At-
lantic Railroad Commission in proceeding against it, will deprive it of its

property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States."

There is a motion to remand both cases, and the matter is now before the court on this motion. Argument has been had, and I have had the matter under advisement for some days.

Perhaps the first question for consideration is the amendment to the petition to remove, proposed by the Southern Railway Company. Assuming that the defendant has the right to amend its petition, as claimed by it, setting up the federal question for removal to this court, which is not conceded, let us see if any federal question is involved on the record made in this case.

[1] It is a suit brought by the state, under authority and by the direction of the Western & Atlantic Railroad Commission, as shown in the plaintiffs' petition, and the lessee company, and they assert the right to the possession and occupancy of certain parts of the right of way of the Western & Atlantic Railroad, of which the Southern Railway Company now has some occupancy and use, and this, it is claimed, it is not authorized to have under the various acts of the Legislature of Georgia, which are set out, and the facts stated in connection therewith. They do not seek to annul any contract which was made between the state of Georgia and the Southern Railway Company, or the Southern Railway Company's predecessors in right, but simply ask to have the rights of the parties determined and settled in this suit. As I understand the pleadings, the court is simply asked to construe the legislation of the state on the subject, and what has been done by the parties, and determine whether the Southern Railway Company has acquired the right to the use of the property named. The case in the superior court of Fulton county also asks the court to construe some executive orders purporting to have been passed in pursuance of certain acts referred to. There is nothing, so far as I can see, that looks to an impairment of the obligation of the contract, or to depriving the defendant of its rights without due process of law.

The act of the Legislature of Georgia of August 4, 1916 (Acts 1916, p. 146), under which these suits are brought, granting powers to the Western & Atlantic Railroad Commission, provides, by way of amendment to the original lease act, a new section to be designated as "section 5a," and in that section provides:

"The said commission, subject to direction in specific cases by the General Assembly, is hereby given full power and authority in its discretion to deal with and dispose of any and all encroachments upon, and uses and occupancies of any part of the right of way and properties of the Western & Atlantic Railroad by any person other than the present lessee and its tenants and licensees under and during the term of the present lease, whether such encroachments, use or occupancy be permissive or adverse, and whether with or without claim of right therefor. The said commission is hereby fully authorized and empowered to determine whether such encroachments, uses and occupancies, or any of them, shall be removed and discontinued, or whether they, or any of them shall be permitted to remain, and, if so, to what extent and upon what terms and conditions. The said commission is further authorized to adjust, settle and finally dispose of any and all controversies that may exist or that may arise with respect to any adverse use or occupancy of any part of said right of way and properties of the Western & Atlantic Railroad, in such manner and upon such terms and conditions as it may deem the best

interests of the state require; and all contracts and agreements that said commission may make or enter into in settlement or disposition of all matters touching such adverse uses and occupancies shall be binding upon the state. The said commission is further authorized and fully empowered to take such action as it may deem proper and expedient to cause the removal and discontinuance of any encroachment, use or occupancy of said right of way and properties which in its opinion should be removed or discontinued; and to this end the commission is authorized and empowered to institute and prosecute, in the name and behalf of the state of Georgia, such suits and other legal proceedings as it may deem appropriate in protection of the state's interest, or the assertion of the state's title."

This act evidently intended simply to protect the state's interest in and to the property of the Western & Atlantic Railroad, and in case the commission should determine that there were encroachments on the property to institute suits and have the rights of the state and the parties who are thought to be so encroaching determined. It is claimed by the amendment to the petition for removal that what is done by the state is an impairment of the obligation of the contract, and seeking to take the defendant's property without due process of law, both in violation of the federal Constitution. It is perfectly clear to me that no such federal question is involved here, even if the right to amend, as proposed by the plaintiff, at the time the amendment was made, exists.

Laying aside this ground for removal as wholly without merit, then we come to the next question, as to the grounds set up in the original petition for removal; that is, diversity of citizenship and the existence of a separable controversy between the Southern Railway Company and the Nashville, Chattanooga & St. Louis Railway, and also that the question with reference to the state is one concerning the title or possession of certain real estate in this district and on the part of the lessee the right to occupancy and noninterference with such occupancy during the term of the lease.

[2] I do not find in this case any separable controversy, whether we look for the rights of the state or of the railroad company, either treating it as the Nashville, Chattanooga & St. Louis Railway, or the corporate name by which it is known under the lease, the Western & Atlantic Railroad Company. The right of the lessee is through its lease from the state. It has no different character of rights in the sense that is necessary to constitute a separable controversy, for the sole question on the part of everybody asserting the claim is whether the Southern Railway Company has the right to its present occupancy and use of the portions of the right of way of the Western & Atlantic Railroad which is in question here. The same controversy exists as to both; that is, through the same evidence and by the same course of reasoning and determination the state gets its rights as owner and the lessee its rights as lessee. Did the Southern Railway, under the legislation set out in the bill and by its continued occupancy of certain portions of the railroad right of way, acquire the right to such occupancy? Has the Southern Railway the right to do what it is doing, and to occupy, as it is, the right of way it is occupying? That is the sole question, and there is no separable controversy in it. Has the

Southern Railway the right it seems to claim, or has it not? That is all that must be determined as to either of the plaintiffs.

[3, 4] Strong argument might be made, and has been made here, in favor of a right to removal in this case for the reason that it involves an action under section 57 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1102 [Comp. St. § 1039]), which comes from section 8 of the act of 1875, and section 738, Revised Statutes, which provides that when in—

"any suit commenced in any District Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. In case such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district; and when a part of the said real or personal property against which such proceedings shall be taken shall be within another district, but within the same state, such suit may be brought in either district in said state: Provided, however, that any defendant or defendants not actually personally notified as above provided may, at any time within one year after final judgment in any suit mentioned in this section, enter his appearance in said suit in said district court, and thereupon the said court shall make an order setting aside the judgment therein and permitting said defendant or defendants to plead therein on payment by him or them of such costs as the court shall deem just; and thereupon said suit shall be proceeded with to final judgment according to law."

Treating the present suit, as I think we properly may, as one covered by this law, and considering the state as an unnecessary or improper party, under the decision of the Supreme Court of Georgia in Southern Railway Co. v. State of Georgia, 116 Ga. 276, 42 S. E. 508, and Coney & Parket et al. v. Brunswick & Florida Steamboat Co. et al., 116 Ga. 222, 42 S. E. 498, it becomes a suit to settle title and right to the occupancy of certain land in this district, and would then be between the Nashville, Chattanooga & St. Louis Railway and the Southern Railway Company. In this view neither party would be a citizen of the state, and the defendant, a nonresident of the state, removes the case. On this line the case of Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, holding that no suit which could not have been originally brought in the Circuit Court of the United States can be removed from a state court, might be urged, to be met by the

fact that, being authorized by the act of Congress I have referred to, now section 57 of the Judicial Code, the suit could have been originally brought in this court and the nonresidence of both parties would be immaterial, they being citizens of different states and embraced within the general, or what is sometimes called the inherent, jurisdiction of the court. But, even if the fact of its being a local action—that is, concerning property within this district—would relieve it of the objection that neither party is a citizen of the state, we are met with the further objection as to whether the decision of the Supreme Court of the state in 116 Ga. (42 S. E.) is pertinent, since the act to which I have referred by the Legislature of Georgia, establishing the Western & Atlantic Railroad Commission, and giving it authority to bring suits such as this concerning encroachments upon the right of way of the railroad. The Supreme Court of the state evidently considered only the general law on the subject of respective rights of lessor and lessee, and did not have at that time—indeed it was not in existence—the act of the Legislature of Georgia which expressly authorizes proceedings by the lessor to relieve itself of unlawful encroachments upon its property.

Upon the whole I must say that, if this case were retained in this court, the propriety and legality of its retention would always be, as it is now, a matter of grave doubt with me. It is well understood, of course, that the jurisdiction here must be clear, and that a doubt as to the jurisdiction is sufficient ground for remanding a removed case to the state court from which it had been removed. I am satisfied, therefore, for the reasons I have given, that these cases should be remanded to the state courts, respectively, from which they were removed. An order may be taken in each case, directing the remand accordingly.